MANUEL FERNÁNDEZ MARTÍNEZ, Plaintiff and Appellee, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, ETC.. Defendant and Appellant.

No. 7401. Argued March 18, 1938.—Decided July 30, 1938.

B. *Fernández García, Attorney General, (R. Cordovés Arana, Assistant Attorney General,* on the brief) and *R. García Cintrón, Deputy Attorney General,* for appellant. *J. Pedro Miranda* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

The plaintiff herein has demanded judgment directing the defendant, the Treasurer of Puerto Rico, to refund the following sums: $89.47, $111.07, $115.11, $129.98, and $101.51 which plaintiff paid under protest as income tax for the years 1928, 1929, 1930, 1931, and 1932, respectively, and also that he be awarded interest on the said sums from the time they were paid until their complete refund, and costs.

The plaintiff had voluntarily paid on the same account $52.52 in $1928, $22.43 in 1929, $13.32 in 1930, and nothing in 1931 or in 1932. The deficiency taxes and surcharges paid under protest are, according to the plaintiff, void, arbitrary, and illegal as having been arbitrarily assessed by the defendant without justification.

The lower court makes a very fair summary of the evidence. It is as follows:

"Manuel Fernández Martínez, plaintiff herein, substantially states that he has been for thirty years a dealer in foodstuffs both wholesale and retail; his main business consists in selling to small grocery stores and has an invested capital not exceeding $10,000; he does not keep any books, owns several pieces of property, and estimated his whole capital at from $20,000 and $25,000 in 1928 and

at not more than $30,000 in 1935. It is well to state here that the year 1935 has nothing at all to do in this action, since the latest tax that is challenged is that for the year 1932. The plaintiff lastly stated that he kept a journal and a cashbook.

"Francisco Freiría, a commission merchant established in this capital, stated that he did not know how much capital the plaintiff had but that he did know the business in which he was engaged and that in such class of business and for the last five years the profit that might be made fluctuated between 3 per cent and 4 per cent, taking into account the market conditions in Río Piedras where competition is very keen. In order to illustrate his statement he said that with $50,000 as his working capital he does a yearly business amounting to $360,000 or $380,000.

"Manuel Martínez, a wholesale merchant, stated that in 1929, with a capital of $40,000 he sold $392,000 worth of goods with a gross profit of 5.60 per cent. He also stated that he is familiar with the line in which the plaintiff deals and that he sells to country stores by arrobas and quintals.

"José Malgor Martínez, also a merchant, sells wholesale and at retail. He also testified regarding the market conditions in Río Piedras and the competition existing in said town.

"Julio López, a witness for the defendant, testified that from 1928 to 1933 he was an income tax inspector; that he investigated the plaintiff's business in Río Piedras; that the latter operated a wholesale and retail business in foodstuffs; that he carired a large stock in his warehouse which he estimated at $16,000; that he did not keep books, but only notes and a notebook in which he used to jot down his accounts; that he added up the notes and came to the conclusion that his sales amounted to $8,000 or $10,000 monthly, that is $100,000 annually approximately; that he estimated the gross profit at 10 per cent, taking as a basis for his calculations similar businesses and the notes kept by the plaintiff.

"Adolfo López Capó, an income tax inspector, testified that he made a liquidation of plaintiff's taxes, which he did from the data furnished him, and that the tax was assessed upon the income."

Based on the above evidence, the court entered judgment directing the Treasurer to readjust or rectify the tax assessed upon the plaintiff for the years 1928–1932, inclusive, taking as a basis the net income upon a total of sales amounting to $50,000 and a gross profit of 5 per cent, and to refund

to the plaintiff any amount collected in excess of the sum thus computed. The Treasurer appealed. He assigned five errors, as follows:

"1. The district court committed an error of law in overruling the motion to strike out filed by the defendant.

"2. The district court committed a manifest error when weighing the evidence in estimating and fixing at $50,000 annually the volume of sales of the plaintiff during the years from 1928 to 1932, inclusive, in his grocery business in Río Piedras.

"3. The district court committed a manifest error when weighing the evidence in estimating and fixing the gross profits made by the plaintiff in his aforesaid business during each of the years from 1928 to 1932, inclusive, at $2,500, that is, at 5 per cent upon $50,000.

"4. The judgment of the district court directing the Treasurer to readjust or rectify the income tax assessed upon the plaintiff for the years 1928–1932, inclusive, taking as a basis the net income upon a total of sales amounting to $50,000 and a gross profit of 5 per cent, and to refund to the plaintiff any amount collected in excess of the sum thus computed, is contrary to the pleadings and the evidence.

"5. The district court erred in sustaining the complaint in the instant case, and rendering judgment in favor of the plaintiff and against the defendant."

The first error assigned relates to a motion filed by the defendant requesting the striking out of the phrases "at the proper time" and "which tax is void, arbitrary and illegal, as the same has been arbitrarily assessed by the defendant without justification, as the profits which it is alleged the plaintiff made in said year . . . . . are uncertain and have never been made by the plaintiff," which appear in the five causes of action set up by the plaintiff in his complaint. The lower court overruled the motion to strike out because it considered, as to the first phrase, that although it constituted a conclusion of law, no prejudice would be caused the defendant by letting the same stand, and as .to the second, because although it was really a conclusion of law, the words that followed justified such conclusion.

In our judgment, it is unnecessary to decide whether or not the court should have sustained the motion to strike out filed by the defendant because, even assuming that it was error to overrule said motion, that in itself would not sufficiently warrant a reversal of the judgment, as has already been held by this court in *People* v. *Heirs of Valdés*, 31 P.R.R. 213, 218, where it was said:

"The error, if any, in overruling the motion to strike and the demurrer was technical and harmless. The complaint can hardly be commended as a model of good pleading, but at the present stage of the proceeding we are not disposed to scrutinize a more or less reprehensible laxity in diction or inaccuracy in the choice of words, nor as the result of such strict construction to reverse the judgment of the district court by reason of any mere technical defect or omission in the complaint."

 The next four assignments will be jointly discussed by us because they all refer to the same question.

Subdivision (*b*) of section 14 of the Income Tax Act of 1924, which is the same as Act No. 74 of 1925 (Session Laws, p. 400), provides as follows:

"(*b*) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Treasurer does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 3 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

The defendant Treasurer considered that the net income of the plaintiff for the years from 1928 to 1932, inclusive, was larger than was declared by him in his income tax returns for the said years, and upon the authority conferred on him by the section above transcribed and because of the fact that

the plaintiff kept no books in his business, assessed his taxes on the basis of the net income of the plaintiff, as estimated by him, during each of the aforesaid years. Thus, instead of $52.52 as declared by the plaintiff for 1928 he assessed his income tax at $141.99; instead of $22.43 declared for 1929 he assessed his income tax at $133.50; instead of $13.32 for 1930 the income tax was assessed at $128.43; and for the years 1931 and 1932 for which no income tax returns were rendered his income tax was assessed at $129.98 and $101.51, respectively. The difference between the amount voluntarily paid by the defendant and the amount at which the defendant assessed his income tax is what is claimed in the present action.

The system followed by the Treasurer acting through his agents in estimating the income tax of the plaintiff as assessed does not clearly reflect his net income from his business during each of the years from 1928 to 1932, inclusive.

The witness López Cruz, who made the investigation, testified that he is an income tax inspector; that prior to his investigation of the plaintiff's business he got information from his friends in regard to the volume of his sales, what sort of man the plaintiff was, and the nature of his business in Río Piedras; that he estimated from his own experience the value of the stock in the grocery store at between $10,000 and $16,000; that he made the investigation in 1933; that from the notes kept by the plaintiff for the year 1933 he estimated the sales at from $8,000 to $10,000 per month and at $100,000 yearly; that he figured the gross profit in accordance with his experience in estimating that of other firms, like Freiría & Co., with a similar business, and that he estimated it at 10 per cent; that the notes furnished him by the plaintiff bore only the day's date and that no inventories were produced; that he estimated the stock kept by the plaintiff from what he saw, but that no invoices were shown to him.

Both the volume. of sales and the percentage of gross profit of the plaintiff's business as estimated by the witness are based, we think, on an arbitrary and fanciful system, and can not, therefore, reflect the net income upon which the deficiency taxes, now claimed by the plaintiff, were assessed against him. According to the testimony of the witness López Cruz, his estimates are based, among other things, on the information from his friends as to the nature of the plaintiff's business. His estimate of the value of the stock is based on what he saw the day he made his investigation, in 1933, and it is a matter for conjecture to try to determine what the said witness might have seen in 1928 or 1929 or in any other of the years subject to investigation. He also testified that he spent a whole morning in the plaintiff's establishment, and that was sufficient for gathering the data which later on served as the basis for estimating the deficiency taxes assessed against the plaintiff.

This is not "such method as . . . . . clearly reflects the income" referred to in section 14, *supra*. As was stated in *Loíza Sugar Co.* v. *Domenech*, 44 P.R.R. 536:

". . . The government cannot invent income on the basis of errors in the manner in which the taxpayer carries his books, as the determination of the net taxable income rests on actual facts and not on theories, technicalities, or bookkeeping entries."

In the case of *In re Sheinman*, 14 F. (2d) 323, 325, where a statute identical with ours was involved, it was said:

"The ascertainment of the amount of the net taxable income of the taxpayer is the ascertainment of a fact. Real facts, and not bookkeeping entries, give rise to income. Books of account are no more than evidential. They are neither indispensable nor conclusive. *Doyle* v. *Mitchell*, 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054; *Southern Pacific Railroad* v. *Muenter*, 260 F. 837, 171 C.C.A. 563; *Douglas* v. *Edwards* (C.C.A.) 298 F. 229; *Baldwin Locomotive Works* v. *McCoach*, 221 F. 59, 136 C.C.A. 660.

"\* \* \* \* \* \* \*

"The method employed by the Revenue Bureau in the instant case was derived from the book accounts of other persons, and does not show what the real income of the bankrupt was during the years in

question. It is not as determinative of that fact as bookkeeping entries of the bankrupt himself would be, nor is it supported by any extrinsic facts produced in evidence. What was done was to find what other taxables had returned as their net incomes, or what the Bureau had found were the incomes of such taxables, and to take an average based on ratio of the return of income of such other persons to their gross sales, and to find as a fact that such average represented the actual income of the bankrupt. This was not the ascertainment of a fact, but merely the exposition of a theory.''

The following is from *In re Harrington*, (D.C. Mo., 1924) 1 F. (2d) 749:

''This is, of course, the fundamental purpose of the law that the taxpayer should be taxed upon his actual income, and that this should neither be diminished nor increased by any arbitrary or artifical method of computation. As the law says, 'the true income must be clearly reflected,' and for this purpose the regular and long-standing methods of accounting employed by the taxpayer, established in due course and for no ulterior purpose, are to be indulged.''

The tax assessed by the Treasurer in the case at bar is not based on any system but rather on the fancy and arbitrariness of the agent in charge of the investigation of the returns filed by the plaintiff herein. The evidence fails to show that any inquiry was made to ascertain whether th'e plaintiff had dealings with any local bank and, if so, the amount of deposits and of the sums withdrawn, as this would have furnished a more exact idea of the nature and extent of his business. Nor was the volume of sales made and the profits derived therefrom by other merchants of the same or similar category in the trade taken as a basis for such computation, but rather that of others with larger capitals. than that of the plaintiff, necessarily resulting in greater returns or profits. Nor was the testimony taken of other persons on whom witness López Cruz called prior to his investigation for information as to the character of the plaintiff and the nature of his business. In view of all which, the judgment appealed from must be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.